IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2004

## KERMIT PENLEY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Greene County**
**No. 03CR078     James E. Beckner, Judge**

---

**No. E2004-00129-CCA-R3-PC - Filed November 1, 2004**

---

The petitioner, Kermit Penley, appeals from a denial of post-conviction relief.  On appeal, the petitioner alleges ineffective assistance of counsel, and that his plea of guilty was not knowing or voluntary.  We affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which JOSEPH M. TIPTON and DAVID H. WELLES, JJ., joined.

David L. Leonard, Greeneville, Tennessee, for the appellant, Kermit Penley.

Paul G. Summers, Attorney General and Reporter; Richard H. Dunavant, Assistant Attorney General; C. Berkeley Bell, Jr., District Attorney General; and Eric D. Christiansen and Cecil C. Mills, Jr., Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

The petitioner pled guilty to first degree murder in exchange for an agreed sentence of life imprisonment.  The petitioner then filed an action for post-conviction relief.  After a full hearing, the petition was denied and this appeal followed.  The appeal alleges that the petitioner received ineffective assistance of counsel and that his plea was not knowingly and voluntarily made.

**Assistance of Counsel**

Our review on a claim of ineffective assistance of counsel is under the standards of Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975), and Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  The petitioner must prove that (1) the attorney's performance was deficient, and (2) the deficient performance resulted in prejudice such as to deprive the defendant of a fair trial.  Id. at 687, 104 S. Ct. at 2064; Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996);

Butler v. State, 789 S.W.2d 898, 899 (Tenn. 1990). If either deficiency or prejudice is not proven, then denial of relief is justified. Goad, 938 S.W.2d at 370.

The test in Tennessee to determine whether counsel provided effective assistance is whether his or her performance was within the range of competence demanded of attorneys in criminal cases. Baxter, 523 S.W.2d at 936. The petitioner must overcome the presumption that counsel's conduct falls within a wide range of acceptable professional assistance. Strickland, 466 U.S. at 689, 104 S. Ct. at 2065; State v. Honeycutt, 54 S.W.3d 762, 769 (Tenn. 2001).

The petitioner bears the burden of proving the factual allegations justifying relief by clear and convincing evidence. Tenn. Code Ann. § 40-30-210(f). We are required to affirm the post-conviction court's findings unless the petitioner proves that the evidence preponderates against those findings. State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).

In support of the petition, there were three witnesses called: Beatrice Penley, the petitioner's mother; T. Wood Smith, one of the petitioner's trial co-counsel; and the petitioner.

Beatrice Penley testified that she had attended all pretrial hearings concerning the petitioner except for the plea entry. She stated that she was not notified of that hearing. She also stated that she had written letters to two of the petitioner's co-counsel, due to an inability to contact them by phone.

Thomas Wood Smith testified that he was one of three co-counsel for the petitioner. Suzanne Thomas was appointed first and served as lead counsel. A third attorney, Douglas Payne, served as unpaid co-counsel. Mr. Smith stated that he had difficulties at times in reaching lead counsel. He stated that defense counsel obtained the services of a mitigation specialist who also served as psychologist. In addition, the petitioner had the benefit of an investigator, a jury consultant, and a communications specialist. The mitigation expert had developed approximately twenty-eight mitigation themes.

On September 6, 2002, the State offered to accept a plea to first degree murder in exchange for a sentence of life imprisonment. The petitioner's trial was set for September 16th. Counsel for the petitioner met with the petitioner on the morning of September 6th and again after lunch to discuss the plea offer and the petitioner's options. The petitioner was advised that if he accepted the plea offer, he would serve a minimum of fifty-one years before he was eligible for release. Mr. Smith filled out the Negotiated Plea Agreement and Waiver of Rights - Guilty Plea form. The Negotiated Plea Agreement was erroneously marked to indicate the offense as a Class A felony and the classification of offender as "standard offender."

On cross-examination, Mr. Smith stated that the petitioner's confession had been a problem for counsel in defense preparation. He stated that all defenses were investigated and all witnesses interviewed. He and co-counsel filed numerous pretrial motions, did independent research, and communicated regularly with the petitioner. He stated that at the time of plea entry, the petitioner

was free of intoxicants, was uncoerced, and understood the consequences of his acceptance. Prior to this, the petitioner had undergone a psychological examination and was determined competent to stand trial.

Kermit Penley testified that he thought he was receiving a fifty-one year sentence with release eligibility after thirty percent service. He denied that co-counsel explained that he would be serving a minimum of fifty-one years day for day and said he only learned this fact when he arrived at Brushy Mountain prison. The petitioner stated that he felt his attorneys "should have built a better defense." He also said that his counsel should have visited with him more.

On cross-examination, the petitioner admitted that the sentence of life imprisonment had been explained to him by the trial judge during the guilty plea hearing. He further admitted that he had told the trial judge he understood the terms of the sentence. The petitioner also had expressed his satisfaction with his representation at the plea hearing.

In his order denying post-conviction relief, the post-conviction judge detailed the steps taken by the petitioner's counsel to prepare a defense. The order recounts the acquisition of experts including an investigator, a psychologist-mitigation expert, a communications specialist, and a jury consultant. Approximately twenty-eight mitigation themes had been developed. Witnesses were interviewed, and all possible defenses were considered. A plethora of pretrial motions had been filed and heard by the petitioner's co-counsel.

In addressing the petitioner's complaints of ineffective counsel, the post-conviction judge stated:

> What [the petitioner] said today was that his specific complaints about his lawyers were that they should have built a better defense. But what would it be? There's no suggestion as to what that might've been.
>
> And he also said that the lawyers should have come to see him more. Why? What would it have done differently? What could've been developed that wasn't developed? What could've been presented that wasn't presented in all these motion hearings and presentations to the court?

We agree with the post-conviction judge that the petitioner received effective assistance of counsel. In fact, from the presentation of evidence, it appears that co-counsel was exemplary in the thoroughness of their trial preparation. The petitioner has presented no evidence that approaches a preponderance against the post-conviction court's findings.

**Guilty Plea**

The petitioner's second and concluding issue alleges that he did not enter a knowing and voluntary plea of guilty.

Concerning guilty pleas in the context of ineffective assistance of counsel, the petitioner must establish that, but for counsel's errors, the petitioner would not have entered the plea and would have insisted on going to trial. See Hill v. Lockhart, 474 U.S. 52, 59, 102 S. Ct. 366, 88 L. Ed. 2d 203 (1985).

The petitioner maintains that he was misled by his attorneys to understand that he was receiving a fifty-one year sentence with a possibility of parole after serving thirty percent. In support of this, the petitioner points to two documents. The Negotiated Plea Agreement was erroneously marked as a Class A felony and as a Standard Offender. The term of sentence was "Life with possibility of parole." The Waiver of Rights - Plea of Guilty form identified the sentence as "Life in the Penitentiary with the possibility of parole."

The statute provides that there is no release eligibility for parole or any other release program on a life sentence, having to be served at 100% less sentence credits earned and retained, not to exceed 15%. Tenn. Code Ann. § 40-35-501(i)(1),(2) (2001). The term "life imprisonment with the possibility of parole" is inaccurate and is mistakenly used to differentiate between the more severe sentence of life imprisonment without possibility of parole. More accurately stated, a sentence of life in prison entitles the defendant to be released, as opposed to paroled, after serving 100% of sixty years less any eligible credits, so long as they do not operate to reduce the sentence by more than 15%, or nine years, which would result in a total sentence of fifty-one years.

Thomas Wood Smith, one of the petitioner's co-counsel, testified that the terms of the plea agreement and the length of the sentence were made explicitly clear to the petitioner. It specifically stressed that the petitioner would serve a minimum of fifty-one years under the terms of the agreement. Mr. Smith's testimony was accredited and accepted by the post-conviction judge.

In addition, the trial judge thoroughly explained the terms of the plea agreement and the minimum length of sentence to the petitioner during the Boykin litany. The petitioner, on two occasions, acknowledged his understanding and his desire to accept the proposed sentence and stated that he was doing so freely and voluntarily. The post-conviction court found that the plea of guilty was voluntarily, knowingly, and intelligently entered. We agree.

In conclusion, we hold that the petitioner received the effective assistance of counsel and that his plea of guilty was freely, voluntarily, and knowingly made. Accordingly, we affirm the denial of post-conviction relief.

_____
JOHN EVERETT WILLIAMS, JUDGE